
**UNITED STATES**
**POSTAL SERVICE.**



FILED
CLERKS OFFICE   Home | Help

2007 APR 16   P 12 16
Track & Confirm

# Track & Confirm

U.S. DISTRICT COURT
DISTRICT OF MASS.

## Search Results

Label/Receipt Number: **RR02 4376 555U S**
Status: **Delivered Abroad**

Track & Confirm

Enter Label/Receipt Number.

Your item was delivered in CANADA at 11:59 AM on March 13, 2007.

*Additional Details >*     *Return to USPS.com Home >*

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.    *Go >*



POSTAL INSPECTORS         site map   contact us   government services   jobs   National & Premier Accounts
preserving the Trust                Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy

 **UNITED STATES
POSTAL SERVICE** ®

Home | Help

**Track & Confirm**

# Track & Confirm

## Search Results

Label/Receipt Number: **RR02 4376 555U S**
Detailed Results:

- **Delivered Abroad, March 13, 2007, 11:59 am, CANADA**
- **At Foreign Delivery Unit, March 13, 2007, 7:22 am, CANADA**
- **Out of Foreign Customs, March 13, 2007, 12:15 am, CANADA**
- **Acceptance, March 06, 2007, 4:35 pm, BOSTON, MA 02112**

< *Back*                                         · *Return to USPS.com Home* >

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   *Go* >

Track & Confirm

Enter Label/Receipt Number.

site map   contact us   government services   jobs   National & Premier Accounts
Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy

ATTORNEYS AT LAW

# Thornton & Naumes LLP

Michael P. Thornton (NH, ME & MA)
John T. Barrett (NH & MA)
Robert T. Naumes
Neil T. Leifer (ME, NJ & MA)
David J. McMorris (NY & MA)
Edwin L. Wallace
Robert M. Byrne, Jr. (NY & MA)
David C. Strouss
Joseph R. Donohue (ME & MA)

Andrew S. Wainwright (NY, MA)
Michael A. Lesser
Marilyn T. McGoldrick
Garrett J. Bradley (NY & MA)
Brad J. Mitchell
Kristen Marquis Fritz
Zoran Malesevic
Robert T. Naumes, Jr. (CT & MA)
Andrea C. Marino



FILED
IN CLERK'S OFFICE
Elizabeth M. Shost
Admitted in NY & PA only

March 6, 2007          2007 APR 16  P 12: 18

U.S. DISTRICT COURT
DISTRICT OF MASS.

### CERTIFIED REGISTERED MAIL NO.: RR 024 376 555 US

ATI Technologies, Inc.
1 Commerce Valley Drive East Markham
Ontario, Canada L3T 7X6

    **RE:    Stephanie Luekel, et al.  vs. Nvidia Corporation**
    **Case No.: 07-CA-10300**

Dear Sir/Madam:

    In regard to the above-captioned matter, enclosed please find the following:

    1.    Summons;
    2.    Class-Action Complaint;
    3.    Civil Cover Sheet; and,
    4.    Category Sheet.

    Please forward said documents to your legal counsel upon receipt of this above.

    Thank you.

                                        Sincerely,

                                        Garrett J. Bradley,

GJB:tc
Enclosures



AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

FILED
CLERKS OFFICE

District of _____ Massachusetts

2007 APR 18 AM 12:18

Stephanie Lueckel

U.S. DISTRICT COURT
SUMMONS IN A CIVIL ACTION
DISTRICT OF MASS

V.

Nvidia Corporatin, ATI Technologies, Inc;
and Advanced Micro Devices, Inc.

CASE NUMBER:

## 07 CA 10300 WGY

TO: (Name and address of Defendant)

To the Person in charge of business for
ATI Technologies, Inc.
1 Commerce Valley Drive East
Markham
Ontario, Canada L3T 7X6

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Garrett J. Bradley, Esquire
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA  02110
(617) 720-1333

an answer to the complaint which is served on you with this summons, within ____20____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

SARAH A. THORNTON

CLERK

(By) DEPUTY CLERK

MAR - 1 2007

DATE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2007 APR 15  P 12: 18

| | |
|---|---|
| STEPHANIE LUECKEL, on behalf of herself and all others similarly situated, | ) ) ) Case No. |
| Plaintiff, | ) ) |
| v. | ) ) |
| NVIDIA CORPORATION; ATI TECHNOLOGIES, INC., and ADVANCED MICRO DEVICES, INC., | ) ) ) ) |
| Defendants. | ) ) |

U.S. DISTRICT COURT
DISTRICT OF MASS.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, by her attorneys, brings this civil action for damages and injunctive relief on behalf of herself and all other similarly situated against the above-named Defendants[1] and, demanding a trial by jury, complains and alleges as follows:

## JURISDICTION AND VENUE

1. This Complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. §26, to obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. §1, and under state statutory and unjust-enrichment laws to recover damages and the costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiff and all others similarly situated sustained as a result of the Defendants' violations of these laws.

2. The Court has jurisdiction over the federal claim under 28 U.S.C. §§1331 and 1337. The Court has jurisdiction over the state-law claims under 28 U.S.C. §1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

---

[1] "Defendants" means each of the above-captioned Defendants who, individually, and collectively through their combination and conspiracy, perpetrated the wrongful conduct complained of herein.

The Court also has jurisdiction over the state-law claims under 28 U.S.C § 1332 because the amount of the controversy for the Money-Damages class defined below exceeds $5,000,000, and Plaintiff and members of the Money-Damages class are citizens of a different state than the Defendants.

3.     Venue is proper in this District under 15 U.S.C. §22 and 28 U.S.C. § 1391 because Defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to Plaintiff's claims arose in this District.

4.     The activities of the Defendants and their co-conspirators were within the flow of, were intended to, and did have a substantial effect and impact on the foreign and interstate commerce of the U.S. and on trade and commerce within the State of Massachusetts.

## DEFINITIONS

5.     "Graphics Processing Units and Cards" are highly specialized semiconductors and related products that increase the speed, complexity, and visual fidelity of digital images that can be displayed on electronic graphical interfaces.

6.     "Class Period" means November 30, 2002 through present.

## THE PARTIES

7.     Plaintiff, Stephanie Lueckel, is a Massachusetts resident who indirectly purchased one or more of the Defendants' Graphics Processing Units and Cards from one or more of the Defendants during the Class Period for end use and not for resale and was injured as a result of Defendants' illegal conduct.

8.     Defendant Nvidia Corporation ("Nvidia") is a Delaware corporation, with its principal place of business at 2701 San Tomas Expressway, Santa Clara, California 95050.

2

During the Class Period, Nvidia manufactured, sold, and distributed Graphics Processing Units and Cards to customers throughout the U.S., including in Massachusetts.

9.     Defendant ATI Technologies, Inc. ("ATI") is a Canadian corporation with its principal place of business at 1 Commerce Valley Drive East, Markham, Ontario, Canada L3T 7X6. During the Class Period, ATI manufactured, sold, and distributed Graphics Processing Units and Cards to customers throughout the U.S., including in Massachusetts.

10.    Defendant Advanced Micro Devices, Inc. ("AMD") is a Delaware Corporation with its principal place of business at One AMD Place, P. O. Box 3453, Sunnyvale, California 94088-3453. On July 24, 2006, AMD and ATI announced a plan to merge in a deal valued at $5.4 billion. The merger closed October 25, 2006. The acquisition consideration included over $2 billion financed from a loan, as well as 56 million shares of AMD stock. During the Class Period, through AMD's acquisition of ATI, AMD manufactured, sold, and distributed Graphics Processing Units and Cards to customers throughout the U.S., including in Massachusetts.

11.    Various others, presently unknown to Plaintiff, participated as co-conspirators with the Defendants in the violations alleged and engaged in conduct and made statements to further and advance these violations.

## FACTUAL ALLEGATIONS

### A.    *The Graphics Processing Units and Cards Industry*

12.    Throughout the Class Period, Defendants and their co-conspirators marketed and sold Graphics Processing Units and Cards throughout the U.S., including in Massachusetts.

13.    Nvidia Corporation states on its website that it is the "worldwide leader in programmable     graphics     processor     technologies."     (<http://phx.corporate-ir.net/phoenix.zhtml?c=116466&p=irol-homeprofile>). It further states that it creates products

3

for computing, consumer electronics, and mobile device applications. In its most recent Form 10Q, filed with the U.S. Securities and Exchange Commission on November 29, 2006, Nvidia stated that it has four major product-line operating segments: The graphics processing unit, or GPU Business; the media and communications processor, or MCP Business; the Handheld GPU Business, and the Consumer Electronics Business.

14.    Nvidia further states that its GPU Business is composed of products that support desktop personal computers or PCs, notebook PCs and professional workstations. Its MCP Business is composed of Nvidia nForce products that operate as a single-chip or chipset that can off-load system functions, such as audio processing and network communications, and perform these operations independently from the host central processing unit or CPU. Nvidia's Handheld GPU Business is composed of products that support handheld personal digital assistants, cellular phones, and other handheld devices. Nvidia's Consumer Electronics Business concentrates in products that support video game consoles and other digital consumer electronics, including Sony's PlayStation 3 and Microsoft's Xbox360 videogame consoles.

15.    The Nvidia GPU and MCP brands include Nvidia GeForce, Nvidia GoForce, Nvidia Quadro, and Nvidia nForce. Nvidia's product applications include video games, film production, broadcasting, industrial design, space exploration, and medical imaging. Nvidia further states that, "[t]he world's leading PC and Handset OEMs incorporate Nvidia technology into their products, including Apple, Dell, Fujitsu Siemens, Gateway, HP, IBM, Lenovo, LG, Medion, Mitsubishi, Motorola, MPC, NEC, Samsung, Sony Electronics, Sony Ericsson, and Toshiba." Nvidia further states that it "partners with a broad range of system builders, such as Alienware, Falcon Northwest, HCL, SAHARA and Shuttle, to deliver solutions at every price point." Additionally, Nvidia products have been adopted by the world's leading add-in card and

4

motherboard manufacturers, including ASUS, BFG, EVGA, Foxconn, GIGABYTE, MSI, Palit, Point of View, and XFX.

16.     Defendant ATI stated in its 2005 Annual Report that it is one of the world's leading providers of graphics processors and technologies. If further stated that its "graphics processing units (GPUs) are highly specialized semiconductors that increase the speed, complexity and visual fidelity of digital images that can be displayed on graphical interfaces." ATI further stated that its products are found in desktop and notebook computers, and consumer electronics devices such as mobile phones, digital televisions, and game consoles.

17.     ATI's two primary markets for its semiconductor graphics products are the PC and consumer markets, and in the first quarter of 2005 it began to report its financial results in two segments – PC and consumer. Its PC segment includes all 3D graphics, video, and multimedia products, and chipsets developed for use in desktop and notebook computers, including professional workstations, servers, and home-media PCs. Its consumer segment includes products used in mobile phones, PDAs, DTVs, and consumer electronics. In the PC segment, ATI's desktop GPU primary brands include Radeon (desktop products), FireGL (workstations), and All-in-Wonder (multimedia products). Its brand for notebook computer discrete products is Mobility Radeon. ATI's chipset products are targeted to motherboard manufacturers and OEMs and include the Radeon Xpress 200 integrated chipsets for the desktop and notebook markets and the Radeon Xpress CrossFire Edition chipsets designed to be used in conjunction with one or more discrete graphics chips in graphically demanding applications, such as gaming.

18.     In its consumer segment, ATI's products are designed to provide advanced visual and audio processing for color-mobile phones and other handheld devices and include ATI's

5

Imageon product line. With respect to digital television, ATI's Xilleon and Theater products are highly integrated visual and signal processing solutions offered to DTV and set-top box manufacturers. In the game console market, the Microsoft Xbox 360 and Nintendo GameCube both utilize AIT's products.

19.    ATI sells its products through various channels and to customers including OEMs; system integrators who build ATI's products into their PCs; original-design manufacturers who add ATI's products to their PC motherboard products or graphic-board products; and traditional and online distributors and retailers.

20.    The market for the manufacture and sale of Graphics Processing Units and Cards is conductive to the collusive activity alleged, as the market is oligopolistic in nature.

21.    The market for the manufacture and sale of Graphics Processing Units and Cards is subject to high manufacturing and technological barriers to entry. Efficient fabrication plants are large and costly. Graphics Processing Units and Cards are also subject to technological advances, so that firms within the industry must undertake significant research and development expenses.

22.    The Graphics Processing Units and Cards industry has also been subject to significant consolidation during the Class Period.

23.    Defendants sell their Graphics Processing Units and Cards through various channels, including to manufacturers of electronic products and devices and to Graphics Processing Units and Cards resellers. These electronic products and devices and Graphics Processing Units and Cards are then sold, directly or indirectly, to consumers and are not altered during the course of sale.

**B.    *Defendants' Illegal Conduct***

6

24.     On November 30, 2006, AMD announced that it had "received a subpoena from the U.S. Department of Justice ("DOJ") Antitrust Division in connection with the DOJ's investigation into potential antitrust violations related to graphics processors and cards." (http://www.amd.com/us-en/Corporate/VirtualPressRoom/0,,51_104_543~114493,00.html>). AMD further stated that "AMD entered the graphics processor business following the company's acquisition of ATI Technologies, Inc. last month (October 25, 2006)." *Id.*

25.     On November 30, 2006, Nvidia announced that it had "received a subpoena from the San Francisco Office of the Antitrust Division of the Department of Justice in connection with the DOJ's investigation into potential antitrust violations related to Graphics Processing Units and Cards." (<http://phx.corporate-ir.net/phoenix.zhtml?c=116466&p=irol-news Article&ID=937753&highlight=>). A report in the December 1, 2006 *San Jose Mercury News* explained that "Department of Justice investigators asked Nvidia for pricing documents, customer agreements and other documents, company spokesman Michael Hara said Friday. 'They have asked for a pretty big data dump that goes back to the late '90s,' Hara said. 'It's a fairly broad request.'" (<http://www.mercurynews.com/mld/mercurynews/ business/ technology/16143619.htm>).

26.     A December 2, 2006 *San Francisco Chronicle* article expanded on Mr. Hara's remarks: "Michael Hara, vice president of corporate communications at Nvidia, said the Justice Department requested documents going back eight or nine years. 'It's a broad range of documents relating to customers, competitors, product stack, prices, market studies – everything, pretty much,' he said." (<http://www.sfgate.com/cgi-bin/article.cgi?file=/chronicle/ archive/2006/12/02/BUGTFMNRS81.DTL&type=business>).

7

27.      New reports also stated that "Gina Talamona, a spokeswoman for the DOJ, said the agency is looking into possible anticompetitive practices within the 'graphics processing unit and cards' industry." (<http://news.com.com/Justice+Dept+subpoenas+AMD%2C+Nvidia/2100-1006.3-6140041.html?tag=stdh>).

28.      Moreover, regular users of Nvidia and ATI graphics cards have voiced suspicions of price-fixing collusion between the two companies in recent years. (<http://episteme.arstechnica.com/eve/forums/a/tpc/f/174096756/m/340003858631/inc/-1>).    One commentator compared the DOJ's investigation of Graphics Processing Units and Cards to its successful prosecution of manufacturers of Dynamic Random Access Memory, which has resulted in $731 million in criminal fines:  "'If the DOJ wanted to, it could just go down very line in the semiconductor industry and find the same issue,' said Gartner Inc. analyst Richard Gordon. 'That's because there are a relatively few number of suppliers in the chip industry and an open flow of communication between competitors and customers, who may not define price fixing the same way the DOJ does,' he said." (<http://www.computerworld.com/action/article/do? commmand=viewArticleBasic&taxonomyName=government&articleID=9005596&taxonomyI D=13&intsrc=kc_top>).

29.      Similarly, in the previously cited *San Francisco Chronicle* article, "Crawford Del Prete of International Data Corp. said the investigation is not surprising.  'I am not surprised that (the Justice Department) is looking into this as there are few suppliers left, which aggregates pricing power,' he said in an e-mail."

30.      Other news reports contained similar comments by analysts.  According to the *San Jose Mercury News* article quoted above, "'I have to believe this stuff traces back into history,' said Doug Freeman, an analyst with American Technology Research.  'As a consumer, I

8

have noticed that the price points of video cards have always been pretty equal. The first mover comes out with a product that is $500 and the follower comes out with a product that is $500. They tend not be in price wars.' Ashok Kumar, an analyst with Raymond James, said the Justice Department was possibly alerted by customers, such as PC makers or the so-called white-box clone PC makers based in Taiwan who try to keep their prices as low as possible. 'The question is, do prices fall with the normal trajectory of the costs?' Kumar said."

## FRAUDULENT, ACTIVE, AND SELF-CONCEALMENT

31.     Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their co-conspirators conducted their conspiracy, which by its nature is self-concealing, in secret and kept it within the confines of their higher-level executives. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants and their co-conspirators concealed the true nature of their unlawful conduct and acts in furtherance of it, and actively concealed their activities through various other means and methods to avoid detection. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws until shortly before commencing this litigation.

32.     As a result of Defendants and their co-conspirators' active concealment, any and all applicable statutes of limitations otherwise applicable to Plaintiff's allegations have been tolled.

## CLASS-ACTION ALLEGATIONS

33.     Plaintiff brings this class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of himself and the following class members:

9

**Injunctive-Relief Class**

All persons and business entities in all 50 states that indirectly purchased Graphics Processing Units and Cards and/or products containing Graphics Processing Units and Cards manufactured, sold, or distributed by Defendants, for end use and not for resale, from November 30, 2002 to present.

Excluded from the Injunctive-Relief Class are Defendants, entities in which Defendants have a controlling interest, Defendants' employees, officers, or directors, Defendants' legal representatives, successors, or assigns, judicial officers who may hear the case or related persons, and jurors or related persons.

Plaintiff also brings this class action pursuant to Rule 23(b)(3) of the Federal Rules of

Civil Procedure on behalf of himself and the following class members:

**Money-Damages Class**

All people and business entities in Massachusetts that indirectly purchased Graphics Processing Units and Cards and/or products containing Graphics Processing Units and Cards manufactured, sold, or distributed by Defendants, for end use and not for resale, from November 30, 2002 to present.

Excluded from the Money-Damages Class are Defendants, entities in which Defendants have a controlling interest, Defendants' employees, officers, or directors, Defendants' legal representatives, successors, or assigns, judicial officers who may hear the case or related persons, and jurors or related persons.

34.    Plaintiff has met the requirements of Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3)

of the Federal Rules of Civil Procedure.

35.    Plaintiff does not know the exact size of the classes, since this information is in

Defendants' exclusive control. But based on the nature of the trade and commerce involved,

Plaintiff believes that each class numbers at least in the hundreds and that the members of each

class are geographically dispersed throughout the State of Massachusetts (Money-Damages

Class), or alternatively, throughout the U.S. including in Massachusetts (Injunctive-Relief Class).

Therefore, joinder of the members of each class would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

36.     Plaintiff's claims within the respective classes are typical of other class members' claims because all class members were injured through the uniform misconduct described and paid supra-competitive prices for products containing Graphics Processing Units and Cards without being informed that they were paying illegal and improper prices. Accordingly, by proving her own claims, Plaintiff will presumptively prove the respective class members' claims.

37.     Common legal and factual questions among and within the respective classes exist, such as:

   a.     Whether Defendants conspired to fix, raise, maintain, or stabilize the prices of Graphics Processing Units and Cards marketed, distributed, and sold in the U.S., including in Massachusetts;

   b.     Whether Defendants conspired to manipulate and allocate the market for Graphics Processing Units and Cards marketed, distributed, and sold in the U.S. including in Massachusetts;

   c.     The existence and duration of Defendants' horizontal agreements to fix, raise, maintain, or stabilize the prices of Graphics Processing Units and Cards marketed, distributed, and sold in the U.S., including in Massachusetts;

   d.     The existence and duration of Defendants' horizontal agreements to manipulate and allocate the market for Graphics Processing Units and Cards marketed, distributed, and sold in the U.S., including in Massachusetts;

   e.     Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to fix, raise, maintain, or stabilize the prices of Graphics Processing Units and Cards marketed, distributed, and sold in the U.S., including in Massachusetts;

   f.     Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to allocate the market for Graphics Processing Units and Cards marketed, distributed, and sold in the U.S., including in Massachusetts;

11

g.     Whether Defendants' conspiracy was implemented;

h.     Whether Defendants took steps to conceal their conspiracy from Plaintiff and the members of each class;

i.     Whether Defendants' conduct caused injury in fact to the business or property of Plaintiff and the respective class members, and if so, the appropriate class-wide measure of damages;

j.     Whether the agents, officers, or employees of Defendants and their co-conspirators participated in telephone calls, meetings, and other communications in furtherance of their conspiracy; and

k.     Whether the purpose and effect of the acts and omissions alleged was to fix, raise, maintain, or stabilize the prices of Graphics Processing Units and Cards marketed, distributed, and sold in the U.S., including in Massachusetts, and to manipulate and allocate the market for Graphics Processing Units and Cards marketed, distributed, and sold in the U.S., including in Massachusetts.

38.    Plaintiff can and will fairly and adequately represent and protect the respective

class members' interests and have no interests that conflict with or are antagonistic to the class

members' interests. Plaintiff's attorneys are experienced and competent in complex class-action

and consumer-antitrust litigation.

39.    Class certification of the respective classes is appropriate under Rule 23(b)(3) of

the Federal Rules of Civil Procedure because a class action is the superior procedural vehicle for

the fair and efficient adjudication of the claims asserted given that:

a.     Common questions of law and fact overwhelmingly predominate over any individual questions that may arise among or within the respective classes and, consequently, enormous economies to the court and parties exist in litigating the common issues, for each class, on a classwide basis  instead of on a repetitive individual basis;

b.     Each individual class member's damage claim is too small to make individual litigation an economically viable alternative, and few class members have any interest in individually controlling the prosecution of separate actions;

12

c.  Class treatment is required for optimal deterrence against, and compensation for, Defendants' wrongful conduct alleged herein; and

d.  Despite the relatively small size of each individual class member's claim, the aggregate volume of their claims, whether considered in a national class or in a Massachusetts class, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to each class.

40.     Plaintiff's claims within and among the respective classes are typical of the associated class members' claims because Defendants injured Plaintiff and the respective class members in the same manner (*i.e.,* Plaintiff and the respective class members were forced to pay supra-competitive prices for products containing Defendants' Graphics Processing Units and Cards).

41.     Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because prosecution of separate actions would create a risk of adjudication with respect to individual members of the respective classes, which may, as a practical matter, dispose of other class members' interests who aren't parties to the adjudication or which may substantially impair or impede individual class members' ability to protect their interests. Separate actions prosecuted by individual class members would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

42.     Class certification, whether as a national class or Massachusetts class, is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the respective class members.

13

## TRADE AND COMMERCE

43.    Throughout the Class Period, Defendants and their co-conspirators engaged in the business of marketing and selling Graphics Processing Units and Cards throughout the U.S., including in Massachusetts. During each year of the Class Period, Defendants sold billions of dollars of Graphics Processing Units and Cards.

44.    The oligopolistic Graphics Processing Units and Cards market is conducive to the conspiracy alleged here. The Graphics Processing Units and Cards market is subject to high entry barriers. Efficient product fabrication plants are large and expensive. Graphics Processing Units and Cards are also subject to technological advances, so firms within the industry must undertake significant research and development expenses.

45.    During the Class Period, Graphics Processing Units and Cards prices rose, due in significant part to the effects of the collusion currently under DOJ investigation.

46.    Electronic device manufacturers and Graphics Processing Units and Cards resellers purchase Graphics Processing Units and Cards directly or indirectly from Defendants and sell Graphics Processing Units and Cards-containing products to consumers, including Plaintiff and all class members.

### COUNT I
### (Applicable to the Injunctive-Relief Class)
### VIOLATION OF THE CLAYTON ACT

47.    Plaintiff repeats and re-alleges paragraphs 1 through 46.

48.    During the Class Period, Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize Graphics Processing Units and Cards prices in the U.S., including in Massachusetts, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

14

49.    In formulating and carrying out their illegal agreement, understanding, and

conspiracy, Defendants did the following things, among others:

> a.    Fixed, raised, maintained, and stabilized Graphics Processing Units and Cards prices;
>
> b.    Allocated Graphics Processing Units and Cards markets among themselves;
>
> c.    Rigged bids for the award and performance of Graphics Processing Units and Cards contracts; and
>
> d.    Allocated Graphics Processing Units and Cards production.

50.    Defendants' combination and conspiracy had the following effects, among others:

> a.    Price competition in the sale of Graphics Processing Units and Cards was restrained, suppressed, or eliminated in the U.S., including in Massachusetts;
>
> b.    Prices for Graphics Processing Units and Cards sold by Defendants were fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the U.S., including in Massachusetts; and
>
> c.    People and entities that purchased Graphics Processing Units and Cards directly or indirectly from Defendants have been deprived of the benefits of free and open competition.

51.    Graphics Processing Units and Cards are necessary to make electronic products

work – products which are now used, and which will at all relevant times in the foreseeable

future continue to be used, by Plaintiff and members of the Injunctive-Relief class. Plaintiff and

Injunctive-Relief class members have been injured and will continue to be injured in their

business and property by having paid more, and/or by continuing to pay more, for Graphics

Processing Units and Cards purchased indirectly from one or more of the Defendants than they

would have paid absent Defendants' conspiracy, including paying more for Graphics Processing

Units and Cards-containing products.

15

52.      As a proximate cause of Defendants' conspiracy, Plaintiff is entitled to an injunction against Defendants preventing and restraining Defendants' violations.

## COUNT II
### (Applicable to the Money-Damages Class)
### VIOLATION OF ALM GL ch. 93A §1 (2006) *et seq.*

53.      Plaintiff repeats and re-alleges paragraphs 1 – 52.

54.      During the Class Period, Defendants engaged in a contract, combination, or conspiracy in restraint of trade or commerce within Massachusetts. In particular, Defendants conspired to fix Graphics Processing Units and Cards prices and allocate Graphics Processing Units and Cards customers and markets. Defendants' conspiracy lessened full and free competition in Graphics Processing Units and Cards' importation and sales into Massachusetts and controlled Defendants' costs, which violated Massachusetts, which violated ALM GL ch. 93A §1 (2006) *et seq*.

55.      Defendants' conspiracy caused them to (a) fix, raise, maintain, and stabilize Graphics Processing Units and Cards prices; (b) allocate Graphics Processing Units and Cards customers and markets; and (c) caused Plaintiff and the other Massachusetts class members to pay higher prices for Graphics Processing Units and Cards that they indirectly purchased from Defendants, which violated ALM GL ch. 93A §1 (2006) *et seq*.

56.      In formulating and effectuating their conspiracy, Defendants and their co-conspirators:

> a.     Met to discuss Graphics Processing Units and Cards customers and markets;
>
> b.     Agreed to charge prices at certain levels and to increase or maintain prices for Graphics Processing Units and Cards sold in Massachusetts;

16

c.    Issued price announcements, quotations, and charged prices consistent with their illegal agreement; and

d.    Allocated Graphics Processing Units and Cards markets and customers consistent with their illegal agreement.

57.    Defendants' conspiracy had the following effects:

a.    Graphics Processing Units and Cards price competition was restrained, suppressed, and eliminated throughout the U.S., including in Massachusetts;

b.    Graphics Processing Units and Cards prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the U.S., including in Massachusetts;

c.    Plaintiff and the other Massachusetts class members that indirectly purchased Graphics Processing Units and Cards were deprived of free and open market competition and were injured; and

d.    Plaintiff and the other Massachusetts class members paid more than they otherwise would have for Graphics Processing Units and Cards that they purchased indirectly.

58.    Defendants' conspiracy has substantially affected and impacted trade and commerce within Massachusetts.

59.    During the Class Period, Massachusetts consumers indirectly purchased millions of dollars of Defendants' Graphics Processing Units and Cards in Massachusetts from Defendants. By reason of Defendants' violations of which violated ALM GL ch. 93A §1 (2006) *et seq.*, Plaintiff and Massachusetts class members paid significantly more for products containing Defendants' Graphics Processing Units and Cards than they would have paid absent Defendants' illegal combination and conspiracy, and, as a result, Plaintiff and Massachusetts class members were injured in their businesses and property and have suffered damages in amounts presently undetermined.

17

60.     At least thirty (30) days prior to the filing of this action, Plaintiff, by her counsel,

mailed a written demand for relief to Defendants, pursuant to ALM GL ch. 93A §9(3) (2006).

## COUNT III
## (Applicable to the Money-Damages Class)
## UNJUST ENRICHMENT

61.     Plaintiff repeats and re-alleges paragraphs 1 through 60.

62.     As the result of Defendants' illegal agreement, contract, combination, and

conspiracy, Plaintiff and the Massachusetts class members conferred a benefit upon Defendants,

and Defendants received and retained this benefit under such circumstances that it would be

inequitable and unconscionable to permit Defendants to retain this benefit without paying its

reasonable value to Plaintiff and the class members.

63.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and

Massachusetts class members suffered injury and seek an order directing Defendants to return to

them the amount each of them improperly paid to Defendants, plus interest.

## JURY DEMAND

64.     Plaintiff demands trial by jury on all triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in the respective class

members' favor and against Defendants, as follows:

A.      That this Court determine that this action may be maintained as a class action
        under Rule 23 of the Federal Rules of Civil Procedure and certify either or both
        classes;

B.      With respect to the Injunctive-Relief Class, that this Court rule that Defendants'
        conspiracy violated the Sherman Act and that injunctive relief under the Clayton
        Act is appropriate;

18

C.   With respect to the Money-Damages Class, that this Court rule that Defendants'
     conspiracy violated Massachusetts law and that compensatory damages, including
     treble damages, are appropriate;

D.   With respect to the Money-Damages Class, that this Court determine that
     Defendants were unjustly enriched and that restitution is appropriate;

E.   That this Court permanently enjoin Defendants from conspiring to fix Graphics
     Processing Units and Cards prices and allocating Graphics Processing Units and
     Cards markets or other injunctive relief as this Court deems appropriate;

F.   That this Court award Plaintiff post-judgment interest, his costs, and reasonable
     attorneys' fees; and

G.   That this Court order any other relief as it deems just and proper.

Dated: February 16, 2007            Respectfully submitted,


By:   _____/s/ Garrett J. Bradley_____
      Garrett J. Bradley, Esq. BBO# 629240
      **THORNTON & NAUMES LLP**
      100 Summer Street
      30th Floor
      Boston, MA 02110
      Telephone:    (617) 720-1333
      Facsimile:    (617) 720-2445
      Email:        gbradley@tenlaw.com

      Daniel R. Karon, Esq.
      **GOLDMAN SCARLATO & KARON, P.C.**
      55 Public Square, Suite 1500
      Cleveland, OH 44113
      Telephone:    (216) 622-1851
      Facsimile:    (216) 622-1852
      E-mail:       karon@gsk-law.com

      Krishna B. Narine, Esq.
      **LAW OFFICES OF KRISHNA B. NARINE**
      7893 Montgomery Avenue, Suite 300
      Elkins Park, PA 19027
      Telephone:    (215) 782-3240
      Facsimile:    (215) 782-3241

19

E-mail:       knarine@kbnlaw.com

Isaac L. Diel, Esq.
**SHARP McQUEEN, P.A.**
Financial Plaza
6900 College Boulevard, Suite 285
Overland Park, KS  66211
Telephone:    (913) 661-9931
Facsimile:     (913) 661-9935
E-mail:        dslawkc@aol.com

Gordon Ball, Esq.
**BALL & SCOTT**
Suite 750, Bank of America Center
550 Main Street
Knoxville, TN  37902
Telephone:    (865) 525-7028
Facsimile:     (865) 525-4679
E-mail:        gball@ballandscott.com

20

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED
CLERKS OFFICE

## I. (a) PLAINTIFFS

Stephanie Lueckel

**DEFENDANTS**

2007 APR 16  P 12: 18

(b) County of Residence of First Listed Plaintiff   Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

U.S. DISTRICT COURT
DISTRICT OF MASS.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Garrett J. Bradley, Thornton & Naumes, 100 Summer Street, 30th Floor, Boston, MA, 02110, (617) 720-1333

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                and One Box for Defendant)

|                                   | PTF | DEF |                                            | PTF | DEF |
|-----------------------------------|-----|-----|--------------------------------------------|-----|-----|
| Citizen of This State             | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State          | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                        | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. 26, 15 U.S.C. 1

Brief description of cause:
Class action for damages and injunctive relief under Clayton and Sherman Acts

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☑ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                      DOCKET NUMBER

DATE
02/16/2007

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

1. Title of case (name of first party on each side only) ___Stephanie Lueckel v. Nvidia Corporation___

2007 APR 16 ₱ 12: 18

U.S. DISTRICT COURT
DISTRICT OF MASS.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

[✓]   I.     160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

[ ]   II.    195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

[ ]   III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

[ ]   IV.    220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

[ ]   V.     150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                        YES [ ]      NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

                                                        YES [ ]      NO [✓]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                        YES [ ]      NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                        YES [ ]      NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                        YES [✓]      NO [ ]

        A.    If yes, in which division do all of the non-governmental parties reside?

              Eastern Division   [✓]        Central Division   [ ]        Western Division   [ ]

        B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
              residing in Massachusetts reside?

              Eastern Division   [ ]        Central Division   [ ]        Western Division   [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                        YES [ ]      NO [✓]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME ___Garrett J. Bradley, Thornton & Naumes, LLP___
ADDRESS ___100 Summer Street, 30th Floor, Boston, MA 02110___
TELEPHONE NO. ___617-720-1333___

(CategoryForm.wpd - 5/2/05)